# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

| | |
|---|---|
| ANDRE MOSS, Individually and for Others Similarly Situated,<br><br>v.<br><br>APEX SYSTEMS, LLC | Case No.   3:20cv00102<br><br>JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

1. Andre Moss (Moss) brings this lawsuit to recover unpaid overtime wages and other damages from Apex Systems, LLC (Apex) under the Fair Labor Standards Act (FLSA).

2. During the relevant period, Apex utilized the services of personnel like Moss to work on its behalf.

3. Many of the workers Apex employed, including Moss, were staffed to Apex by third-party entities.

4. Moss, and the other personnel like him who worked for, or on behalf of Apex, regularly worked more than 40 hours per workweek.

5. However, Moss and the other workers like him were not paid overtime.

6. Instead of paying overtime as required by the FLSA, Apex improperly classified these workers as independent contractors and paid them the same hourly rate for all hours worked, including those in excess of 40 in a workweek (or, "straight time for overtime") with no overtime compensation in violation of the FLSA.

7. Moss brings this collective action to recover the unpaid overtime wages and other damages owed to him and other workers like him.

### JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331

because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Apex is headquartered in this District and Division.

10. Moreover, Apex selected this Court as the mandatory venue for employment disputes in its standard employment agreement.

11. Therefore, Apex selected this venue for this dispute.

### THE PARTIES

12. During the relevant time period, Moss worked for Apex installing or troubleshooting telephone or internet services.

13. Throughout his employment, Apex paid Moss straight time for overtime with no overtime compensation and classified him as an independent contractor.

14. Moss' consent to be a party plaintiff is attached as Exhibit A.

15. Moss brings this action on behalf of himself and all other similarly situated personnel who worked for, or on behalf of Apex, who were classified as independent contractors and paid straight time for overtime.

16. Moss and the workers like him were paid the same hourly rate for every hour worked and did not receive overtime for all hours that they worked over 40 hours in a workweek in accordance with the FLSA.

17. The class of similarly situated employees sought to be certified is defined as follows:

> **All personnel that worked for Apex Systems, LLC while classified as independent contractors and paid straight time for overtime during the last three years. (the "Putative Class Members")**

18. **Apex Systems, Inc.** may be served by serving its registered agent for service of process, Carl Omohundro, Jr. at 4400 Cox Rd., Suite 200, Glen Allen, Virginia 23060.

## COVERAGE UNDER THE FLSA

19. At all times hereinafter mentioned, Apex has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20. At all times hereinafter mentioned, Apex has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21. At all times hereinafter mentioned, Apex has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

22. Apex has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as oilfield equipment, hand tools, computers, automobiles, and cell phones.

23. Apex's annual gross volume of sales made, or business done, has exceeded $1,000,000.00 in each of the past three years.

24. At all relevant times hereinafter mentioned, Moss and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

25. At all relevant times hereinafter mentioned, Apex treated Moss and the Putative Class Members as employees and applied their straight time for overtime pay practice to Moss and the Putative Class Members.

26. The misclassification of Moss and the Putative Class Members as independent contractors does not alter their status as employees for purposes of this FLSA collective action.

## FACTS

27. Apex is a staffing services firm headquartered in Glen Allen, Virginia.

28. Apex provides technical professionals to clients within numerous major industries.

3

29. Apex has a presence in over 70 markets across North America with employees placed in client companies throughout the U.S. and Canada.

30. In 2018, Apex had over 44,500 professionals engaged on customer projects.

31. To provide services to many of its customers, Apex retains workers like Moss.

32. Apex hired Moss in February of 2017.

33. Moss left Apex's employment in September of 2017.

34. Moss worked for Apex as an Outside Plant Telephone Technician.

35. Moss worked for Apex in North Carolina, South Carolina, and Georgia.

36. Apex and the third-party entities it staffed personnel to jointly determine and share control over the terms and conditions of employment.

37. Apex and the third-party entities who it staffed personnel to jointly hired and fired, supervised and controlled, set pay, determined hours, and approved time sheets with respect to these workers.

38. Apex is a joint employer of the personnel it staffed to third-party entities.

39. Many of the personnel Apex staffed to, including Moss, were paid on straight time for overtime, misclassified as independent contractors, and make up the proposed Putative Class.

40. Even if their job titles and precise job duties differed, Apex subjected Moss and the Putative Class Members to the same or similar illegal pay practices for similar work.

41. Specifically, Apex classified all Putative Class Members as independent contractors and paid them straight time for overtime, regardless of the number of hours that they worked that day (or in that workweek).

42. Apex failed to pay overtime for the overtime hours Moss and the Putative Class Members.

43. Throughout his employment, Apex classified Moss as an independent contractor and

4

paid him on straight time for overtime.

44. Apex directed Moss to work 12 (or more) hours a day for as many as fourteen days in a row.

45. Moss worked well in excess of 40 hours each week while employed by Apex, often for weeks at time.

46. The work Moss performed was an essential part of Apex's core business.

47. During Moss' employment with Apex and while he was classified as an independent contractor, Apex exercised control over all aspects of his job.

48. Apex did not require any substantial investment by Moss for him to perform the work required of him.

49. Apex controlled Moss' opportunity for profit and loss by dictating the days and hours he worked and the rate he was paid.

50. Moss was not required to possess any unique or specialized skillset (other than that maintained by all other workers in his respective position) to perform his job duties.

51. While working for Apex, Apex controlled all the significant or meaningful aspects of the job duties performed by Moss.

52. Apex exercised control over the hours and locations Moss worked, tools and equipment used, and rates of pay received.

53. No real investment was required of Moss to perform his job.

54. More often than not, Moss utilized equipment provided by Apex or its clients to perform his job duties.

55. Moss did not provide the significant equipment he worked with on a daily basis. Apex or the operator made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Moss worked.

56. Moss did not incur operating expenses like rent, payroll, marketing, and insurance.

57. Moss was economically dependent on Apex during his employment with Apex.

58. Apex set Moss' rates of pay, his work schedule, and effectively prevented (or outright prohibited) him from working other jobs for other companies while he was working on jobs for Apex.

59. Apex directly determined Moss' opportunity for profit and loss.

60. Moss' earning opportunity was based on the number of hours he worked for Apex.

61. Very little skill, training, or initiative was required of Moss to perform his job duties.

62. Indeed, the daily and weekly activities of Moss and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Apex and its clients.

63. Virtually every job function was pre-determined by Apex and its clients, including the tools and equipment to use at a job site, the data to compile, the schedule of work, and related work duties.

64. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow Apex's policies, procedures, and directives.

65. Moss and the Putative Class Members performed routine job duties that were largely dictated by Apex.

66. Moss was not employed by Apex on a project-by-project basis.

67. In fact, while Moss was classified as an independent contractor, he was regularly on call for Apex and was expected to drop everything and work whenever needed.

68. All of the Putative Class Members working for, or on behalf of Apex, are subjected to the same or similar policies and procedures, which dictate the day-to-day activities performed by

each person, regardless of the third-party entity they were staffed to.

69. The Putative Class Members working for, or on behalf of Apex, also worked similar hours as Moss and were denied overtime as a result of the same illegal pay practice, regardless of the third-party entity they were staffed to.

70. All of the Putative Class Members working for, or on behalf of Apex, all worked in excess of 40 hours each week and were often scheduled to work 12-hour shifts (at a minimum) for weeks at a time, regardless of the third-party entity they were staffed to.

71. Instead of paying them overtime, Apex paid Moss and the Putative Class Members straight time for overtime and misclassified them as independent contractors.

72. Apex denied Moss and the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

73. Moss and the Putative Class Members were never paid on a salary basis. They never received any guaranteed weekly compensation from Apex irrespective of hours worked.

74. Apex's policy of classifying Moss and the Putative Class Members like him as independent contractors and failing to pay them overtime, violates the FLSA because these workers are, for all purposes, non-exempt workers.

75. Because Moss and the Putative Class Members like him were misclassified as independent contractors by Apex, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

76. Apex's straight time for overtime scheme violates the FLSA because Moss and the Putative Class Members like him did not receive any overtime pay for hours worked over 40 hours each week.

### FLSA VIOLATIONS

77. As set forth herein, Apex has violated, and is violating, Section 7 of the FLSA, 29

U.S.C. § 207, by employing employees for workweeks longer than 40 hours without paying them overtime.

78.     Apex knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Moss and the Putative Class Members like him overtime compensation.

79.     Apex's failure to pay overtime compensation to these workers was neither reasonable, nor was the decision not to pay overtime made in good faith.

80.     Accordingly, Moss and the Putative Class Members like him are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### COLLECTIVE ACTION ALLEGATIONS

81.     The illegal pay practices Apex imposed on Moss were likewise imposed on the Putative Class Members working for, or on behalf of, Apex.

82.     Numerous individuals were victimized by Apex's pattern, practice, and policy which is in willful violation of the FLSA.

83.     Based on his experiences and tenure with Apex, Moss is aware that such illegal practices were imposed on the members of the Putative Class.

84.     Moss and the Putative Class Members like him were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty hours per week.

85.     Apex's failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of any of the Putative Class Members like Moss.

86.     Moss' experiences are therefore typical of the Putative Class Members who worked for, or on behalf of, Apex.

87. The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent collective treatment.

88. Moss has no interests contrary to, or in conflict with, the members of the Putative Class Members. Like each member of the Putative Class Members, Moss has an interest in obtaining the unpaid overtime wages owed under federal law.

89. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

90. Absent this action, the Putative Class Members likely will not obtain redress of their injuries and Apex will reap the unjust benefits of violating the FLSA.

91. Furthermore, even if some of the Putative Class Members could afford individual litigation against Apex, it would be unduly burdensome to the judicial system.

92. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the Putative Class Members and provide for judicial consistency.

93. Moss' claims are similar to the claims of the Putative Class Members who worked for, or on behalf of, Apex who were classified as independent contractors and paid straight time for overtime with no overtime compensation. Moss and the other workers like him sustained damages arising out of Apex's illegal and uniform employment policy.

94. Moss knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

95. Even if the number of hours worked by the workers like Moss varies, the proof and method for calculating damages is common.

96. Further, there is no detraction from the common nucleus of liability facts.

**JURY DEMAND**

97. Moss demands a trial by jury.

**RELIEF SOUGHT**

98. WHEREFORE, Moss prays for judgment against Apex as follows:

   a. An order allowing this action to proceed as a collective action under the FLSA and directing notice to all Putative Class Members who Apex classified as independent contractors and paid straight time for overtime during the last three years;

   b. For an Order pursuant to Section 16(b) of the FLSA finding Apex liable for unpaid back wages due to Moss and the Putative Class Members like him for liquidated damages equal in amount to their unpaid compensation;

   c. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

   d. For an Order granting such other and further relief as may be necessary and appropriate.

Dated:   February 17, 2020

Respectfully submitted,

By: */s/ Zev H. Antell*
Harris D. Butler (VSB No. 26483)
Zev H. Antell (VSB No. 74634)
**Butler Royals, PLC**
140 Virginia Street, Suite 302
Richmond, Virginia 23219
804-648-4848 – Telephone
804-237-0413 – Facsimile

**Michael A. Josephson**
Texas State Bar No. 24014780
**Andrew Dunlap**

        Texas State Bar No. 24078444
**Richard M. Schreiber**
Texas State Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com
(*pro hac vice* application to be filed)

**AND**

**Richard J. (Rex) Burch**
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com
(*pro hac vice* application to be filed)

**ATTORNEYS FOR PLAINTIFFS**